UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **DAMIEN DEMPSEY**, <br><br> Defendant. | Case No. 1:19-cr-368 (TNM) |

**MEMORANDUM AND ORDER**

Damien Dempsey is serving a 57-month sentence for unlawful possession of a firearm within a school zone and possession of an unregistered firearm. He is incarcerated at Federal Correctional Institute ("FCI") Fort Dix in New Jersey. Dempsey seeks compassionate release. He claims that his health conditions put him at greater risk of serious illness or death if he contracts COVID-19. The Government opposes Dempsey's release. Upon consideration of the parties' briefs, the relevant law, and the entire record of this case, the Court denies Dempsey's motion for the reasons below.

**I.**

Police found an unregistered and loaded .38 caliber revolver in Dempsey's possession while he was in a school zone. Joint Statement of Offense in Supp. Def.'s Plea of Guilty at 4, ECF No. 27.[1] The officers also "observed that [Dempsey] appeared under the influence of an unknown controlled substance." *Id.* at 3–4. Dempsey had three prior felony convictions then— one for armed robbery and two for controlled substances—that precluded him from possessing a firearm. *See* Presentence Investigation Report ("PSR") at 7–12, ECF No. 42. He pleaded guilty to one count each of Unlawful Possession of a Firearm Within a School Zone, in violation of 18

---

[1] All page citations refer to the pagination generated by the Court's CM/ECF system.

U.S.C. §§ 922(q)(2)(A) and 924(a)(4), and Possession of an Unregistered Firearm, in violation of D.C. Code § 7-2502.01(a). *See* Superseding Information, ECF No. 25; Plea Agreement, ECF No. 26.

The Court detained Dempsey pretrial. *See* Hr'g Tr. (Nov. 6, 2019), ECF No. 16. The Court has recounted the reasons supporting Dempsey's detention in an earlier decision:

> First, the Court found that the nature and circumstances of the offense weighed in favor of detention because Dempsey was arrested with a loaded firearm and on suspicion that he was under the influence of phencyclidine (PCP)—a suspicion that was confirmed by a positive test at lockup. Second, the Court found that the weight of the evidence also supported Dempsey's detention because he was arrested in possession of a loaded firearm. Third, the Court considered Dempsey's history and characteristics. Although the Court found that Dempsey's lifelong connections to the District of Columbia and his stable home life weighed in favor of release, the Court found that these were outweighed by the balance of considerations like his extensive criminal record, and that this factor ultimately supported his detention.

Mem. & Order (Apr. 10, 2020) at 2, ECF No. 37 (cleaned up). The Court also noted Dempsey's "repeated revocations and unsatisfactory probation terms." *Id.* at 3 (cleaned up). Dempsey appealed his pretrial detention, *see* Notice of Appeal, ECF No. 12, and the D.C. Circuit summarily affirmed, *see* Judgment, No. 19-3089 (D.C. Cir. Jan 22, 2020), ECF No. 30-1.

While detained, Dempsey sought release because of the COVID-19 pandemic. *See* Emergency Mot. for Release, ECF No. 31. Dempsey argued that he was at heightened risk from the coronavirus because he suffers from "hypertension, diabetes, is very overweight and [is] asthmatic." *Id.* at 15; *see also id.* at 4 ("Mr. Dempsey falls within one of the most at-risk populations for this disease."). The Court denied his motion. *See* Mem. & Order (Apr. 10, 2020). It found that "Dempsey poses as great a danger now as he did when he was arrested with a loaded firearm and under the influence of PCP." *Id.* at 6. His "history of crimes and violations of probation and court supervision [gave] the Court no confidence he would abide by the Mayor's [Stay-at-Home] Order either." *Id.* at 7. The Court acknowledged "Dempsey's fear of

2

contracting COVID-19." *Id.* at 8.  But it reasoned that any heightened risk based on detention did not "alter the balance of the statutory factors Congress prescribed for determining the propriety of detention, which continue to weigh heavily in favor of detention." *Id.* (cleaned up).

The Court sentenced Dempsey to 57 months and one day.  *See* J. in a Criminal Case at 2, ECF No. 51.  He is incarcerated at FCI Fort Dix and has served less than two years of his sentence.  *See* Gov't Opp'n to Def.'s Mot. to Reduce Sentence ("Gov't Opp'n") Ex. 2 at 5, 7, ECF No. 66 (Sealed).

Dempsey again seeks release because of the COVID-19 pandemic.  This time, he files a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A)(i).  *See* Mot. to Reduce Sentence ("Def.'s Mot."), ECF No. 60.  Dempsey asks the Court to reduce his sentence to time-served or that he serve the rest of his term on home confinement.  *Id.* at 1.  Dempsey represents that he can live with his girlfriend in her apartment in the District upon release.  *Id.*

Thirty days have passed since Dempsey submitted his release request to FCI Fort Dix's warden without a response.  Def.'s Mot. Ex. B, ECF No. 62-2 (Sealed); *see also* Def.'s Mot. at 5–6 (noting that he requested release on February 19, 2021 and that he "has not received a response").  So Dempsey's motion is properly before this Court.  *See* Gov't Opp'n at 10 ("The government agrees that the defendant has exhausted administrative remedies.").  The Government, though, opposes the motion.

## II.

Until recently, courts in this District could grant a compassionate release motion only if they found "extraordinary and compelling reasons warrant the reduction" *and* that "the defendant is not a danger to the safety of any other person to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(1)(A), (2).  That has changed.

3

The D.C. Circuit recently modified the standard that applied to defendant-filed compassionate release motions in *United States v. Long*, --- F.3d ---, 2021 WL 1972245 (D.C. Cir. May 18, 2021). It agreed with a majority of other circuits that "U.S.S.G. § 1B1.13 is not 'applicable' to defendant-filed motions for compassionate release under the First Step Act." *Id.* at *8 (collecting cases); *see also id.* at *9 ("In short, if a compassionate release motion is not brought by the Director of the Bureau of Prisons, U.S.S.G. § 1B1.13, by its own terms, is not applicable."). In other words, no longer is the "dangerousness factor a rigid precondition to release." *Id.* at *10.

But "courts still must consider and weigh the factors laid out in Section 3553(a), which include the need 'to protect the public from further crimes of the defendant' and to ensure 'adequate deterrence to criminal conduct.'" *Id.* (quoting 18 U.S.C. § 3553(a)(2)(B) & (C)). "So even without the policy statement, courts will still consider the anticipated effect of compassionate release on crime and public safety for defendant-filed motions as part of their weighing of relevant considerations." *Id.*

After *Long*, the Court considers the 18 U.S.C. § 3553(a) factors to determine whether "extraordinary and compelling reasons warrant" a reduction of Dempsey's sentence. 18 U.S.C. § 3582(c)(1)(A)(i).

### III.

Dempsey raises two arguments for his compassionate release: (A) the COVID-19 pandemic presents an extraordinary and compelling reason; and (B) he is not a danger to the community.

**A.**

Dempsey asserts that the "spread of COVID-19 in the BOP in conjunction with [his] health conditions present an extraordinary and compelling reason to grant [his] compassionate release." Def.'s Mot. at 6. He says that he is severely obese, suffers from asthma, and has a history of hypertension and diabetes, all of which place him at high risk of severe illness or death if he contracts the coronavirus. *Id.* at 13–17. Dempsey also contends that the "Government cannot legitimately claim that the BOP has taken the proper steps to reduce or contain the spread of this dangerous virus in Fort Dix FCI." *Id.* at 6. According to Dempsey, his "health conditions and the conditions at Fort Dix provide for no margin of error for him should he become infected." *Id.* at 9.

The Government does not dispute that Dempsey suffers from these health conditions. *See* Gov't Opp'n at 15 ("[T]he government's review of defendant's recent BOP medical records confirms that the defendant has a current diagnosis for both obesity and Type 2 Diabetes."). It also agrees that some of Dempsey's conditions "would otherwise qualify as 'extraordinary and compelling reasons' in light of COVID-19." *Id.* at 13. But the Government argues that Dempsey still does not qualify for compassionate release because he refused the COVID-19 vaccine. *Id.* ("[B]ecause the defendant refused to take the COVID-19 vaccine, which is the best protection against COVID-19 inside or outside of prison, he has not established an extraordinary and compelling reason despite his medical conditions.").

The "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The Court finds that the coronavirus does not warrant a sentence reduction here for two reasons.

5

*First*, as Dempsey admits, conditions have significantly improved at FCI Fort Dix (and everywhere). *See* Def.'s Reply to Gov't's Opp'n ("Def.'s Reply") at 5, ECF No. 67 ("recogniz[ing] that infections at Fort Dix have dropped since peaking earlier this year closer to the time that he filed his motion for release[.]"). The evidence Dempsey cites to show that FCI Fort Dix cannot offer him adequate protection is stale. *See* Def.'s Mot. at 6–8 (citing judicial decisions from 2020, CDC weekly report from August 2020, news article from November 2020, and March 2021 Senate letter). Right now, *no* inmates and *no* staff members are positive with the virus. *See Covid-19 Coronavirus* (May 24, 2021), https://www.bop.gov/coronavirus/ ("*BOP Statistics*").[2] These numbers compare more favorably to other prisons, *see id.* (noting that 4 inmates and 5 staff members are positive at Oklahoma City FTC), as well as to Washington, D.C., which had nearly 600 new cases between May 8 and May 23, *COVID-19 Surveillance* (May 23, 2021), https://coronavirus.dc.gov/data. *See also* Def.'s Mot. at 3 (recognizing that "the current infection rate [at Fort Dix FCI] is not the most extreme amongst BOP facilities"). Over half of FCI Fort Dix's population—1,481 inmates—and 247 staff members are fully vaccinated. *BOP Statistics*. These numbers too are better than the 39% and 42% vaccination rates nationally and in the District, respectively. *See* Josh Holder, *Tracking Coronavirus Vaccinations Around the World*, N.Y. TIMES, May 24, 2021.[3] Dempsey has been tested twice and tested negative both times. *See* Gov't Opp'n Ex. 3 at 66, 68 (Sealed). All this evidence refutes Dempsey's contention that FCI Fort Dix cannot adequately protect him from COVID-19.

---

[2] These numbers are lower than the positive cases that Dempsey and the Government cited in their briefs. *See* Def.'s Mot. at 7 (noting that 3 inmates and 42 staff members tested positive); Gov't Opp'n at 7 (noting that 6 inmates and 40 staff members tested positive).

[3] Publicly available at https://www.nytimes.com/interactive/2021/us/covid-cases.html.

*Second*, Dempsey was offered and refused the COVID-19 Moderna vaccine.[4] *See* Gov't Opp'n at 6, 16 (citing Ex. 3 (Sealed)). Dempsey responds that racial minorities and prisoners like himself "are skeptical of the benefits of the vaccine." Def.'s Reply at 1. He points to the "paucity of education about the vaccines that inmates are offered," which "only serves to further support their fear and mistrust." *Id.* at 4.

But Dempsey represented in his original motion that he "ha[d] requested to be vaccinated" and that "there [was] no indication when he will receive it." Def.'s Mot. at 9. His sudden reversal suggests that the refusal stems not from a distrust of the vaccine but from a desire to augment his release chances. It also undermines his suggestion that he refused the vaccine over jailhouse rumors about the vaccine or misperceptions attributable to his status as an incarcerated minority. *See* Def.'s Reply at 1–2. Rather, Dempsey was interested in being vaccinated and has the advantage of being represented—and informed of the benefits of vaccination—by counsel. Dempsey remains at greater risk from COVID-19 because he chooses to be.

To be sure, Dempsey is free to reject the vaccine. *Id.* at 4 ("Mr. Dempsey submits that he should not be penalized for what numerous other individuals, including BOP staff members, are choosing."). But his decision, as with all decisions, is not consequence-free. "Courts have recognized—without apparent exception—that a defendant's refusal to be vaccinated substantially diminishes any argument for release premised on the risk posed by COVID-19." *United States v. Piles*, No. CR 19-292-5 (JDB), 2021 WL 1198019, at *3 (D.D.C. Mar. 30, 2021)

---

[4] In his motion, Dempsey argued that "it [was] unclear when all prisoners will have access to the vaccine." Def.'s Mot. at 8. He suggested that it may take time for prisoners to receive the vaccine because of "the politics of such a decision" and because BOP staff would receive the vaccine first. *Id.* Yet Dempsey admits that he was offered and rejected the vaccine. *See* Def.'s Reply at 1 ("As the government notes, Mr. Dempsey has declined the COVID vaccine.").

7

(collecting cases). By choosing not to get vaccinated, Dempsey endangers himself and those around him, including District residents if he returned here. *See United States v. Cole*, 459 F. Supp. 3d 116, 122 (D.D.C. 2020) ("if the risk of contracting the virus at the D.C. Jail is as high as Cole suggests . . . releasing him now would potentially inject a carrier of the virus into the D.C. community").

The Court agrees with the Government that "it would not make sense to grant compassionate release to inmates like [Dempsey] who remain more susceptible to COVID-19 only because they have refused to protect themselves and others by getting vaccinated, but deny compassionate release to inmates who have taken advantage of the vaccine." Gov't Opp'n at 19. Because Dempsey "declined the opportunity to reduce his risk exposure to COVID-19 dramatically[,] he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction." *Piles*, 2021 WL 1198019, at *3 (cleaned up).

The Court finds unconvincing Dempsey's suggestion that even with the vaccine there is an extraordinary and compelling reason for his release because there is risk of reinfection and new strands of the virus. *See* Def.'s Mot. at 9–12. True, Dempsey could theoretically still contract COVID-19 if vaccinated. But the available vaccines have been shown to be effective against the serious, life-threatening complications that Dempsey fears and that might otherwise justify compassionate release. *See* CDC, *Benefits of Getting a COVID-19 Vaccine* (Apr. 12, 2021).[5] Indeed, the CDC has issued new guidance that "fully vaccinated people no longer need to wear a mask or physically distance in any setting." CDC, *Interim Public Health*

---

[5] Publicly available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html?s_cid=10511:%2Bbenefits%20%2Bof%20%2Bcovid%20%2B19%20%2Bvaccine:sem.b:p:RG:GM:gen:PTN:FY21.

8

*Recommendations for Fully Vaccinated People* (May 13, 2021).[6]  FCI Fort Dix has vaccinated over half of the inmate population and the Court is "hopeful that the risk of reinfection will continue to decrease" as those efforts continue.  *Piles*, 2021 WL 1198019, at *3.

**B.**

"[E]ven if [Dempsey] *had* presented 'extraordinary and compelling reasons' for release, the Court may reduce his term of imprisonment only if the balance of the § 3553(a) factors favor his release."  *United States v. Edwards*, Cr. No. 03-234 (JDB), 2020 WL 5518322, at *4 (D.D.C. Sept. 12, 2020); *see also* 18 U.S.C. § 3582(c)(1)(A)(i) ("the court . . . may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable.").  They do not.

The Court has twice before considered and rejected Dempsey's efforts for release.  *See* Hr'g Tr. (Nov. 6, 2019); Mem. & Order (Apr. 10, 2020).  Although considered in different contexts with different standards, the Court's same reasoning applies to reject Dempsey's renewed attempt here.

Dempsey claims that police seized the gun "without incident" and there was no "allegation of violence."  Def.'s Mot. at 18.  Perhaps.  But illegally possessing a firearm, as Dempsey admits, "is serious."  *Id.*  More troubling is that Dempsey had this gun while on PCP.  *See* Mem. & Order (Apr. 10, 2020) at 2.  Gun possession and drug use are a lethal combination.  The nature and circumstances of Dempsey's offense weigh against release.

Dempsey's history and characteristics also favor continued detention.  Dempsey has three convictions—one for armed robbery and two for controlled substances.  *See* PSR at 7–12.  He argues that "[a]side from an armed robbery he committed as a juvenile 22 years ago, nothing in

---

[6] Publicly available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html.

9

[his] criminal history suggests a proclivity for guns." Def.'s Mot. at 18. The Court recognizes that Dempsey's most recent felony conviction before now was over ten years ago. PSR at 11. While older, the prior convictions still reinforce the Court's concern that Dempsey has a tendency to get involved with drugs, dangerous weapons, or both. *Cf. United States v. Holroyd*, 464 F. Supp. 3d 14, 19 (D.D.C. 2020) ("If a defendant still poses a danger to the community or if the balance of factors under § 3553(a) favor continued imprisonment, these are independent reasons to deny a motion for compassionate release.").

Dempsey's ongoing drug problem also poses a risk. At the time of his arrest, Dempsey was high on PCP. Mem. & Order (Apr. 10, 2020) at 2. He has tested positive multiple times for cocaine and PCP while on supervision in previous criminal cases. PSR at 10. As he admits, Dempsey "has struggled with substance abuse addiction since he was a young man" and "would greatly benefit from a substance abuse program." Def.'s Mot. at 18–19. And he says that "[e]ach of his convictions or violations of supervised release is directly related to his substance abuse." *Id.* Dempsey's unmitigated drug problem thus raises additional concerns that, if released, he will engage in the same criminal behavior that stems from his drug use. *See also* Mem. & Order (Apr. 10, 2020) at 6 ("Dempsey poses as great a danger now as he did when he was arrested with a loaded firearm and under the influence of PCP."). Dempsey has agreed to participate in the BOP's Residential Drug Abuse Treatment Program, which provides "intensive drug treatment." *See* Gov't Opp'n at 27 (citing Ex. 3 (Sealed)). The Court expects that this program can help Dempsey quash his substance abuse and dissuade him from committing any future crimes.

Dempsey asserts that older criminal defendants like himself "recidivate at much lower rates than their younger counterparts." Def.'s Mot. at 19. Dempsey, though, "has never

successfully completed a period of supervision in the community." Gov't Opp'n at 25. For example, he violated his supervised release *three* times after he was released on his first controlled substance conviction. PSR at 9; *see also* Hr'g Tr. (Nov. 6, 2019) 31:2–11 (noting Dempsey's "repeated revocations and unsatisfactory probation terms."). His record leaves no confidence that he will "abid[e] by any conditions of release this Court were to impose." Def.'s Mot. at 21; *see also* Mem. & Order (Apr. 10, 2020) at 7 (finding that Dempsey's "history of crimes and violations of probation and court supervision [gave] the Court no confidence he would abide by the Mayor's [Stay-at-Home] Order either."). In short, Dempsey is the exception that proves the rule. Hr'g Tr. (Nov. 6, 2019) 36:7-21 (Court: "I am very concerned that you as a 38-year-old are carrying around a gun as a three-time felon. Most gun offenders sentenced in this district are in their 20s. By the time they reach their 30s, they grow up and realize they need to obey the law. But not you.").

The Court sentenced Dempsey less than a year ago and he has served about a third of his sentence. *See* Gov't Opp'n at 26 (citing Ex. 2 (Sealed)). During sentencing, the Court found that "unlike most gun offenders who are younger and then learn to obey the law, [Dempsey] is in his late 30's and is still committing crimes even after prior convictions." Statement of Reasons at 3, ECF No. 52. The Court also considered Dempsey's "track record of committing serious felonies and then violating supervised release." *Id*. Dempsey offers no reason for the Court to revise its prior finding that the sentence imposed is sufficient but not greater than necessary under Section 3553(a). *See Long*, 2021 WL 1972245, at *10 ("courts will still consider the anticipated effect of compassionate release on crime and public safety for defendant-filed motions as part of their weighing of relevant considerations.").

11

## IV.

For all these reasons, it is hereby

**ORDERED** that Defendant's [60] Motion for Compassionate Release is DENIED.

Dated: May 24, 2021                                             TREVOR N. McFADDEN, U.S.D.J.